ORIGINAL

# In the United States Court of Federal Claims

No. 07-328C
(Filed September 4, 2014)
NOT FOR PUBLICATION

FILED

SEP - 4 2014

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * *
                                            *
                                            *
MURRAY R. BERKOWITZ,                        *
                                            *
                 Plaintiff,                 *
                                            *
        v.                                  *
                                            *
THE UNITED STATES,                          *
                                            *
                 Defendant.                 *
                                            *
* * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Plaintiff, Dr. Murray R. Berkowitz, claims the Army improperly denied him a medical retirement. Doctor Berkowitz, a major in the U.S. Army Medical Corps, developed sleep apnea, as well as related health problems, which prevented his continued military service. When plaintiff was discharged he was given a 0% disability rating. He was then honorably discharged and medically separated from the Army with severance pay. Plaintiff, however, claims the Physical Evaluation Board (PEB) erred in its findings, ignored relevant evidence, and failed to follow proper procedures. He argues that he was entitled to a higher disability rating, and also claims he was entitled to certain veterans' education benefits. Both parties have moved for judgment on the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC). The government also moved to dismiss plaintiff's veterans' benefit claim. For the reasons that follow, the motion to dismiss plaintiff's education benefits claim is **GRANTED**; defendant's motion for judgment on the administrative record regarding plaintiff's other claims is **DENIED**; and plaintiff's motion for judgment on the administrative record is **GRANTED**.[1]

---

[1] Plaintiff also filed a motion for a preliminary injunction, asking the Court to order the government to stop withholding certain monies from his veterans' disability payments. Because this opinion resolves Dr. Berkowitz's claim in its entirety, his

# I. BACKGROUND

## A. Statement of Facts

Plaintiff served in the United States Armed Forces from 1975, or earlier, until his medical discharge on April 23, 2000.[2]  Def.'s Rule 52.1 Statement of Facts (Def.'s Stat.) ¶¶ 2, 33; Pl.'s Resp. and Counter-Statement of Facts (Pl.'s Counter-Stat.) ¶¶ 2, 33.  He eventually earned the rank of major in the Army Medical Corps. Def.'s Stat. ¶¶ 2–7; Pl.'s Counter-Stat. ¶¶ 2–7.  Plaintiff entered the Army Reserve on October 14, 1979, and was discharged on January 28, 1981, in order to join the United States Air Force Reserve.  Admin. R. (AR) at 341, 346–47.  He continued to serve in the Air Force in a reserve capacity until January 27, 1991, and then served on active duty while participating in Operations Desert Shield and Desert Storm. AR at 200.  While in the Air Force, he was promoted to lieutenant colonel.  AR at 13, 117.  Plaintiff was discharged from active duty in the Air Force and re-entered the Army Reserve in the rank of lieutenant colonel in order to participate in the U.S. Army Health Professions Scholarship Program (HPSP) and begin his professional schooling.  AR at 14–15, 200, 255–56.  After completing this program, Dr. Berkowitz re-entered active duty in the Army as a major in the medical service corps.  AR at 257–59, 269.  He was still serving as a major when he was discharged in April of 2000.  AR at 103.

In 1997, Dr. Berkowitz was diagnosed with severe obstructive sleep apnea, and a Medical Evaluation Board (MEB) was convened to evaluate him.  Def.'s Stat. ¶¶ 8, 10; Pl.'s Counter-Stat. ¶¶ 8, 10.  During the MEB evaluation, plaintiff was evaluated by several specialists.  Doctor Sydnor-Greenberg examined Dr. Berkowitz and concluded that although he "is still functioning in the very superior range of intelligence . . . there is evidence of inattention and slowed processing as well as executive dysfunction."  AR at 173.

Doctor Richard Bransdorf, who also examined plaintiff during his MEB processing, concluded that plaintiff had "marked cognitive and memory deficits

---

motion for a preliminary injunction is **DENIED** as moot.  *See Fundicao Tupy S.A. v. United States*, 840 F.2d 1101, 1104 (Fed. Cir. 1988) (entry of final judgment renders moot a preliminary injunction).

[2] There is some ambiguity in the record regarding Dr. Berkowitz's entry into military service.  One form indicates that he had sixty-months of enlisted service prior to his being commissioned in August of 1976.  Admin. R. (AR) at 199.  Another form indicates that he began his service in February of 1975, but makes no reference to sixty months of enlisted service prior to his commissioning.  AR at 272. Because either date would afford plaintiff the relief he seeks, we need not decide which date is the correct one.

which have caused him great difficulty in learning to become a physician." AR at 180. Doctor Bransdorf felt these deficits were "due in all likelihood to his sleep apnea," which made plaintiff's impairment for social and industrial adaptability "[s]evere, as manifested by his inability to function as a physician, electrical engineer, or military officer." AR at 180. The doctor further concluded that Major Berkowitz suffered from "[m]ixed (predominantly obstructive with some central component) sleep apnea," and that it was unlikely that he would be able to continue his military service. *Id.*

Doctor Overfield, who also examined Major Berkowitz, noted that while plaintiff's condition stabilized after being treated with continuous positive airway pressure (CPAP), he had not returned to normal. AR at 159. Doctor Overfield diagnosed plaintiff as having "[s]ubtle cognitive decline," which he thought was "due to cerebral hypoxia secondary to his severe obstructive sleep apnea." *Id.* Two neurologists, Drs. Lerew and Mulligan, evaluated plaintiff, *see* AR at 161–66, and issued a report "intended as a confirmatory supplement" to previous examinations, AR at 163. These neurologists concluded that the various test results "support the hypothesis that the patient suffered brain damage during the months that his sleep apnea went undiagnosed, but a definitive conclusion of etiology may not be realistically possible." AR at 165. The neurologists' report confirmed the findings of Dr. Sydnor-Greenberg and Dr. Bransdorf. *Id.*

Based upon these examinations, the MEB concluded that Dr. Berkowitz suffered from "[m]arked cognitive and memory deficits" leading to a severe degree of impairment. AR at 56, 127–32. The MEB diagnosed Dr. Berkowitz with severe impairment for social and industrial adaptability; mixed sleep apnea; mild Attention Deficit Disorder; severe Breathing Related Sleep Disorder with marked impairment for civilian, social, and industrial adaptability; and moderate cognitive disorder with marked impairment for military duty and severe impairment for civilian, social, and industrial adaptability. AR at 127. The MEB report was approved on December 21, 1998, and it recommended that plaintiff's case be referred to an informal Physical Evaluation Board for further proceedings. AR at 127, 132.

The informal PEB examined plaintiff and found that he suffered from "mixed sleep apnea, obstructive with a central component requiring CPAP with breathing related sleep disorder and a cognitive disorder." AR at 133. It also found that plaintiff's level of industrial impairment due to sleep apnea was mild and that he was physically unfit for duty and recommended that he be separated with severance pay and a disability rating of 0%. *Id.* It further held that plaintiff's impairment was not the "direct result of armed conflict or caused by an instrumentality of war," *id.*, and thus his benefits were not tax-free, *see* 26 U.S.C. § 104(b)(2).

Plaintiff contested the informal PEB's findings and requested a formal PEB hearing to review them. AR at 134–36. He submitted several additional medical

reports to the formal PEB, including a memorandum from Dr. Margery Myers at the Gulf War Health Center. Doctor Myers stated that she examined Major Berkowitz in 1997 and believed that his case "very much fits into the pattern of Gulf War Illness," as the symptoms in his medical records "are consistent with Gulf War Syndrome and are felt to be the direct result of his wartime service." AR at 61–62; Def.'s Stat. ¶ 22; Pl.'s Counter-Stat. ¶ 22. Plaintiff also offered an opinion from Dr. Konrad Bakker, who wondered "if the patient's obstructive sleep apnea has not been optimally treated or there is another cause for the patient's cognitive decline other than the sleep apnea," AR at 88; and the opinion of Dr. Charles Privitera, who stated that the cause of the plaintiff's impairment is "unknown," AR at 85; Def.'s Stat. ¶ 22; Pl.'s Counter-Stat. ¶ 22. After reviewing all submitted materials, including the additional materials submitted by plaintiff, the formal PEB affirmed the informal board's conclusions and recommendations. AR at 137–38; Def.'s Stat. ¶ 27; Pl.'s Counter-Stat. ¶ 27.

Plaintiff contested the formal PEB's decision and submitted a rebuttal to its findings. Def.'s Stat. ¶ 28; Pl.'s Counter-Stat. ¶ 28. Plaintiff then appealed his case to the United States Army Physical Disability Agency (USAPDA). Def.'s Stat. ¶ 29; Pl.'s Counter-Stat. ¶ 29. The USAPDA upheld the formal PEB decision on January 14, 2000, stating the findings were "supported by substantial evidence," did not violate regulations or directives, and "were not arbitrary or capricious." AR at 102; Def.'s Stat. ¶ 29; Pl.'s Counter-Stat. ¶ 29.

Plaintiff next applied for relief with the Army Board for Correction of Military Records (ABCMR) on January 17, 2000. Def.'s Stat. ¶ 30; Pl.'s Counter-Stat. ¶ 30. Plaintiff again submitted additional medical opinions in support of his application. Def.'s Stat. ¶ 30; Pl.'s Counter-Stat. ¶ 30. The Army Review Board's Agency Medical Advisor concurred with the PEB findings, AR at 114–15, and plaintiff submitted rebuttal materials in response, AR at 105–12; Def.'s Stat. ¶ 31; Pl.'s Counter-Stat. ¶ 31. The ABCMR rejected his petition for relief. AR at 100–104.

Following the ABCMR's decision, Dr. Berkowitz was medically discharged from the Army with a disability rating of 0% on April 23, 2000. AR at 24. Plaintiff's discharge was "Honorable," and he was entitled to $137,390.40 in disability severance pay at the pay grade of lieutenant colonel. Def.'s Stat. ¶ 33; Pl.'s Counter-Stat. ¶ 33; AR at 24, 26. He twice sought reconsideration with the ABCMR. It denied both requests, stating that plaintiff had not submitted new evidence that was not previously available to the board. Def.'s Stat. ¶ 34; Pl.'s Counter-Stat. ¶34.

Doctor Berkowitz then filed an original disability claim with the Veterans Administration (VA) on July 28, 2000. Def.'s Stat. ¶ 35; Pl.'s Counter-Stat. ¶ 35. Shortly following his discharge, based on plaintiff's medical records, as well as VA examinations of plaintiff, the VA determined that Dr. Berkowitz was entitled to VA benefits of 50% for sleep apnea disorder, 50% for cognitive disorder and attention

deficit disorder, 10% per hand for his carpal tunnel syndrome, 10% for lumbosacral strain with degenerative changes, and 10% for hypertension. AR at 38–44. The VA concluded that all of these conditions were related to his military service. *Id.* After the subsequent addition of another 40% disability rating for chronic fatigue syndrome, he was assigned a final disability rating of 90%. AR at 33–36.

## B. Procedural History

Plaintiff, proceeding *pro se*, initially filed his complaint in the United States District Court for the District of Maryland. The district court transferred his case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631, and plaintiff's new complaint was timely filed under RCFC 3.1(a). Plaintiff alleges that the PEB ignored medical evaluations and evidence indicating that his medical conditions arose from his service in the Persian Gulf War, and that the United States Army denied him certain benefits related to his medical disability including a medical retirement. *See* Compl. ¶¶ 4–13. He requests that the Court order the government to: (1) provide him certain veterans education benefits he is presently being denied; (2) increase his disability rating above the 30% threshold, entitling him to a medical retirement; and (3) exclude his disability benefits from his gross income. *Id.* ¶ 14.

The government has filed a motion to dismiss plaintiff's claim concerning the GI Bill educational benefits and a motion for judgment on the administrative record concerning plaintiff's other claims. Plaintiff filed an opposition to both motions, as well as a "Motion for a Directed Verdict" which the Court has elected to treat as a cross-motion for judgment on the administrative record. The Court has heard multiple oral arguments and, in light of plaintiff's *pro se* status, has permitted the filing of nearly a score of supplemental papers. The matter is, to say the least, fully briefed.

## II. DISCUSSION

### A. The Government's Motion for Partial Dismissal for Lack of Subject-Matter Jurisdiction

Under RCFC 12(b)(1), claims brought before this court must be dismissed when it is shown that the court lacks jurisdiction over their subject matter. When considering a motion to dismiss for lack of subject-matter jurisdiction, courts will normally accept as true all factual allegations made by the pleader and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 325 (2012).

While a *pro se* plaintiff's filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this lenient standard cannot save claims which are outside the court's jurisdiction from being dismissed, *see Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). The party invoking a court's jurisdiction bears the

burden of establishing it, and must ultimately do so by a preponderance of the evidence. *See McNutt v. GMAC*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991).

The government argues that we do not possess subject-matter jurisdiction to review the denial of plaintiff's claim for VA education benefits. Def.'s Mot. to Dismiss in Part and for J. on Admin. R. (Def.'s Mot.) at 13. The government is correct. Even assuming, as plaintiff argues, that the only reason he is being denied such benefits is because the Army failed to inform him of the program (as required by Army Regulation 735-40 ¶¶ 3–8(a)(5)), that would do nothing to cure the jurisdictional defect. Pl.'s Resp. to Def.'s Mot. to Dismiss in Part and for J. on Admin. R. and Mot. for a Directed Verdict (Pl.'s Resp.) at 1–2. Disputes concerning veterans' benefits are handled internally by the VA, with appeal to the United States Court of Appeals for Veterans Claims. *See* 38 U.S.C. § 7252. Decisions of that court in turn can be appealed to the Federal Circuit. *See* 38 U.S.C. § 7292. "Claims for veterans' benefits are not within the jurisdiction of the Court of Federal Claims." *Van Allen v. United States*, 66 Fed. Cl. 294, 296 (2005). Accordingly, the government's motion to dismiss the education benefits claim is **GRANTED**.[3]

## B. The Cross-Motions for Judgment on the Administrative Record

### *1. Standard of Review*

A motion for judgment on the administrative record under RCFC 52.1 differs from a motion for summary judgment under RCFC 56, as the existence of genuine issues of material fact does not preclude judgment on the administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1355–56 (Fed. Cir. 2005); *Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006). Rather, a motion for judgment on the administrative record examines whether the administrative body, given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review. *See Fort Carson*, 71 Fed. Cl. at 585; *Greene v. United States*, 65 Fed. Cl. 375, 383 (2005); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 388 (2005). Factual findings are based on the evidence in the record, "as if [the Court] were conducting a trial on the record." *Bannum*, 404 F.3d at 1357; *see also Carahsoft Tech. Corp. v. United States*, 86 Fed. Cl. 325, 337 (2009); *Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 350 (2004).

---

[3] Plaintiff's other claims are clearly within our subject-matter jurisdiction. *Fisher v. United States*, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (finding 10 U.S.C. § 1201 to be a money-mandating statute that can support jurisdiction in this court).

The administrative decision will be upheld unless it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, procedurally defective, or unsupported by evidence in the record. *Gulf Grp.*, 61 Fed. Cl. at 351. A reviewing court can overturn a board's decision if it finds that the board based its decision on an incorrect interpretation of the applicable law, as "the right to determine questions of law . . . is the exclusive province of the courts." *Tyson v. United States*, 91 Ct. Cl. 139, 141–44 (1940).

### 2. Plaintiff's Claim for a Medical Retirement

Plaintiff argues that he is entitled to a medical retirement, rather than a medical separation.[4] He contends that his disability rating should be increased (beyond the 30% threshold necessary for a medical retirement) to correctly account for his sleep apnea and associated cognitive conditions, chronic fatigue syndrome, hypertension, carpal tunnel syndrome, and lumbosacral strain; and that defendant should provide him back pay and interest reflecting a medical retirement. Compl. ¶ 14; Pl.'s Resp. at 5–10. Plaintiff makes four arguments in support of this claim.[5] First, he argues that the PEB's conclusion that his sleep apnea was "mild" and thus required a 0% rating was not supported by substantial evidence. Second, he argues that the PEB committed various procedural errors in reaching the conclusion that his sleep apnea was mild. Third, he argues that the PEB improperly failed to award him a disability rating based on all of his medical conditions. Fourth, plaintiff argues that the PEB applied the wrong legal standard when it rated his sleep apnea.

The Court agrees with plaintiff's fourth argument: the board applied an improper legal standard when it rated his sleep apnea, and the matter must be remanded so the proper standard can be applied. As a result, we need not reach plaintiff's first and second arguments --- his challenge to the board's conclusion that plaintiff's sleep apnea was "mild" and thus only entitled him to a 0% rating, and his contention that various procedural errors were committed in reaching this result. But plaintiff's third argument --- that the board erred by only assigning him a disability rating for his sleep apnea and ignoring his other conditions --- must still be addressed, and is considered first.

---

[4] A medical separation is awarded to a service member who is found to be medically unfit for continued service, but is awarded a disability rating of less than 30%. 10 U.S.C. § 1203(b)(4)(A).

[5] These arguments mainly disputed the way the board weighed evidence --- such as its having given greater weight to the opinions of more junior, as opposed to more senior, medical officers. *See* Pl.'s Resp. at 5, 9.

Plaintiff claims that the board improperly refused to assign him a disability rating for his cognitive disorder on the ground that the disorder was caused by his sleep apnea. Compl. ¶ 14. A review of the record does not support plaintiff's contention that the two conditions should have been found to be unrelated. All of the medical professionals who offered an opinion on this point either thought sleep apnea caused his cognitive disorder, or they were unsure of its cause. *See* AR at 85, 87–88, 128, 137, 159, 165, 173, 180. The board's conclusion that plaintiff's sleep apnea was the cause of his cognitive problems is clearly supported by substantial evidence. Therefore, plaintiff's contention that the PEB erred in not assigning him a disability rating for his cognitive disorder is rejected.

Plaintiff also makes the related argument that the PEB erred by refusing to adjust his disability rating to account for the other medical problems that the VA determined to have been incurred in the line of duty. Compl. ¶ 14. There is no evidence, however, that any of these conditions rendered him unfit for service, or contributed to his lack of fitness. *See* AR at 137 (PEB finding the unfitting condition to be "[m]ixed sleep apnea with a central component, requiring CPAP with a breathing related sleep disorder and a cognitive disorder, not otherwise specified"). Thus, the PEB properly excluded them from the computation of plaintiff's disability percentage. *See* Army Reg. 635-40, App. B-3(a) ("Once a soldier is determined to be physically unfit for further military service, percentage ratings are *applied to the unfitting conditions* from the VASRD." (emphasis added)).[6]

Plaintiff's fourth argument is that the PEB was required to follow the VASRD as promulgated by the VA. Instead of doing so, he claims that the Department of Defense (DOD) improperly developed its own interpretative regulations, under which he received a lower disability rating. Pl.'s Reply Br. (Pl.'s Reply), ECF No. 47, at 11–13; Pl.'s Reply to Def.'s Supp'l Br., ECF No. 67, at 36.

The VASRD provides the following four disability levels and rating criteria for sleep apnea syndromes, under diagnostic code 6847:

> Chronic respiratory failure with carbon dioxide retention or cor pulmonale, or; requires tracheostomy ---------------------------------- 100%

> Requires use of breathing assistance device such as continuous airway pressure (CPAP) machine ----------------------------------------- 50%

> Persistent day--time hypersomnolence --------------------------------- 30%

> Asymptomatic but with documented sleep disorder breathing --  0%

---

[6] This regulation was not clearly inconsistent with the version of the medical retirement statute then in effect. *See* 10 U.S.C. § 1201(a)–(b) (2000).

38 C.F.R. § 4.97 (2000). It is undisputed that Dr. Berkowitz's condition requires the use of a CPAP machine. The VA therefore awarded him a 50% rating for sleep apnea. AR at 38–40.

The determination by a military service secretary that a member should be medically retired is governed by 10 U.S.C. § 1201. That section provides that a member is to be medically retired if, *inter alia*, "the disability is at least 30 percent *under the standard schedule of rating disabilities in use by the Department of Veterans Affairs* at the time of the determination." 10 U.S.C. § 1201(b)(3)(B) (2012) (emphasis added).[7] Congress thus clearly and unambiguously required service secretaries to use the VASRD rating schedule. This would not appear to preclude the armed services from interpreting any ambiguous standards employed in the VASRD schedule, and the Federal Circuit has acknowledged that a "Secretary may make *upward* departures from the VASRD guidelines in particular cases." *McHenry v. United States*, 367 F.3d 1370, 1379 (Fed. Cir. 2004).

A DOD Instruction, issued slightly more than two months after the VA published its final rule adding sleep apnea syndromes to the VASRD schedule, contained an enclosure which described itself as "a supplement to the VASRD that contains principles for rating disabilities where additional guidance or clarification is needed for processing active duty and Reserve military disability cases." DODI 1332.39, Enclosure 2 ¶ E2.1.1 (1996). Under this enclosure, "the VASRD is the starting point and initial guidance for an impairment rating," but "[b]ecause the enclosure modifies selected VASRD ratings, it is the final reference for impairment adjudications." *Id.*, ¶ E2.1.2. The special instruction for sleep apnea syndromes, diagnostic code 6847, provides:

> The VASRD lists four percentage rating options: 0%, 30%, 50%, and 100% under this code, corresponding to assessed levels of disability relative to civilian earning capacity due to Sleep Apnea. The following interpretation will apply:

| | |
|---|---|
| Total industrial impairment | 100% |
| Considerable industrial impairment | 50% |
| Definite industrial impairment | 30% |
| Mild industrial impairment | 0% |

---

[7] The medical separation provision, 10 U.S.C. § 1203, similarly requires determinations to be "under the standard schedule of rating disabilities in use by the Department of Veterans Affairs," but applies to members whose disability rating was less than 30% or was not service-related. *See* 10 U.S.C. § 1203(b)(4)(A)–(C) (2012).

*Id.*, ¶ E2.A1.2.21. Applying this schedule, which does not reference a breathing assistance device, the PEB assigned plaintiff a 0% rating. AR at 133. Thus, the Army assigned plaintiff a different disability rating than he would (and, in fact, *did*) receive under the VASRD schedule. The question for the Court is whether this application of the DOD interpretative instruction violates 10 U.S.C. § 1201(b)(3)(B).

The government offers two justifications for this application of the DOD sleep apnea instruction. First, defendant cites the authority given to each military service secretary under 10 U.S.C. § 1216(a) to "prescribe regulations to carry out this chapter within his department." *See* Def.'s Surreply, ECF No. 91 (Def.'s Surreply), at 2. This includes "all powers, functions and duties incident to determination under this chapter of . . . the percentage of disability of any such member at the time of his separation from active duty." Def.'s Surreply at 2 (quoting 10 U.S.C. § 1216(b)(2)). Defendant contends that this regulatory authority, combined with the long history of military departments issuing regulations that vary from the VASRD, are sufficient to make the disability determination lawful. *Id.* at 2–6.

The problem with this argument is that, under chapter 61 of title 10, the percentage disability determination for purposes of medical retirement or separation is unambiguously required to be made "under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination." 10 U.S.C. §§ 1201(b)(3)(B), 1203(b)(4)(A)–(C). A regulation does not "carry out" that provision if it disregards the criteria employed in the VASRD and replaces them with a different set of standards, nor can such an action be considered "incident to" a determination under the disregarded schedule. A requirement that a particular schedule be used is not implemented by a regulation that ignores the schedule, and --- when Congress imposes such a limitation on authority --- actions which sidestep that requirement can hardly be within the power delegated to the executive branch.

This is not to say that when the VASRD schedule employs ambiguous terminology, the service branches are powerless to interpret it. But there is no ambiguity in the VASRD schedule's treatment of service members whose sleep apnea "[r]equires use of [a] breathing assistance device such as [a] continuous airway pressure (CPAP) machine" --- this entitles the individual to a 50% disability rating. 38 C.F.R. § 4.97, Code 6847. Unlike the standard in its place in the enclosure to DODI 1332.39, this is clear and straightforward. The Court also notes that, at the time the DOD instruction issued, service secretaries could depart from the VASRD if this would treat service members more generously. *See McHenry*, 367 F.3d at 1379.[8] Thus, were the sleep apnea instruction to be used in addition to the

---

[8] As we shall see, the power to prescribe criteria for such departures is now jointly shared by the Secretaries of Defense and of Veterans Affairs. *See* 10 U.S.C. § 1216a(a)(2).

VASRD, so that a member who did not use a CPAP machine could still receive a 50% rating when suffering "[c]onsiderable industrial impairment," this would not violate the section 1201 mandate. But in Dr. Berkowitz's case, the DOD instruction was not used to supplement the VASRD schedule, but supplanted it.

The government maintains, nevertheless, that its application of the DOD instruction regarding sleep apnea was consistent with 10 U.S.C. § 1201, because the instruction employs the "structure" of the VASRD. Oral Argument (February 11, 2014). By this, defendant seems to mean that the "percentage levels are the same as those that appear in the VASRD." Def.'s Surreply at 4. But stripping the VASRD ratings of their definitions and substituting different ones does not constitute an "interpretation" of those ratings, even if the DOD calls it one. It is simply not possible to read "the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination," 10 U.S.C. § 1201(b)(3)(B), to mean that only the rating percentages, but not the criteria which determine them, must be used.

The second justification offered by the government is difficult to understand. In short, its contention appears to be that a statute passed by Congress more than a half century after the enactment of section 1201 "implicitly acknowledged and condoned" departures from that section's plain requirements, Def.'s Supp'l Br., ECF No. 104, at 5, because the latter statute prohibits such departures. *See also* Def.'s Surreply at 5–6. In 2008, changes to the military disability evaluation system were enacted. The new provision emphasized that the service secretaries "shall, to the extent feasible, utilize the schedule for rating disabilities in use by the Department of Veterans Affairs, including any applicable interpretation of the schedule by the United States Court of Appeals for Veterans Claims." 10 U.S.C. § 1216a(a)(1)(A). To further drive home the point, Congress explicitly mandated that the secretaries "may not deviate from the schedule" except when the Secretary of Defense and Secretary of Veterans Affairs jointly agree to adopt criteria that would increase the disability rating for a service member. *Id.* § 1216a(a)(1)(B), (a)(2). The government argues that if section 1201 is interpreted not to allow departures from the VASRD schedule, the language in section 1216a precluding such departures "would be superfluous," contrary to a canon of construction. Def.'s Surreply at 6 (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). It also stresses that the 2008 act "did not require retroactive application of any VASRD provision *vis[-à-]vis* disability determinations." Def.'s Supp'l Br., ECF No. 104, at 4.

The Court does not see how the surplusage canon is relevant, as it is not section 1216a --- enacted several years after Dr. Berkowitz was separated from the Army --- but section 1201 that matters for our purposes, and superfluity is to be avoided within the confines of the statute being construed, not in comparison with another statute. *See Duncan*, 533 U.S. at 172–75. Moreover, to the extent that section 1216a can be considered a declaration of one Congress's opinion of a prior one's intent, *see Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S.

102, 118 n.13 (1980), it would seem to indicate that departures from the VASRD schedule were not intended. In any event, the unambiguous language of section 1201 requiring that the VASRD schedule be followed, does not render any of the terms of section 1216a superfluous --- as the latter modified this mandate by authorizing departure from the VASRD schedule when the schedule's utilization was not feasible. 10 U.S.C. § 1216a(1)(A).[9] The latter enactment clearly modified the procedure to be followed in making determinations under the former. It follows that the above-adopted interpretation of 10 U.S.C. § 1201 does not render any part of 10 U.S.C. § 1216a meaningless.

It is undisputed that plaintiff would have received a higher disability rating had the VASRD schedule been applied to his sleep apnea condition. The application of the DOD instruction in plaintiff's case was clearly inconsistent with the plain and unambiguous text of section 1201 and of the VASRD schedule. The Supreme Court has long maintained that, when a statute's meaning is clear, an agency has no authority to disregard such meaning. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984). Defendant should have applied the VASRD schedule, diagnostic code 6847, in Dr. Berkowitz's case, resulting in a disability rating of at least 50% and a medical retirement.

It follows from the foregoing that the board erred by applying a legally infirm standard to the detriment of plaintiff. Therefore the board's decision was not in accordance with law and must be reversed.[10]

### *3. Whether Plaintiff's Benefits Are Includible in Gross Income*

The final issue before the Court is whether Dr. Berkowitz's benefits were improperly determined to be includible in his gross income, and thus subject to tax. Plaintiff makes two arguments in favor of the non-taxability of his benefits. First, he argues that the PEB determination that his sleep apnea was not the direct result of combat or war-time service was not supported by substantial evidence. Pl.'s Reply at 21–23 (discussing Army Reg. 635-40 ¶ 4-19(k)). Second, he argues that,

---

[9] Section 1216a also modified the medical retirement proceedings by requiring that a particular tribunal's interpretations be followed, and restricting the service secretaries' ability to depart upwards from the VASRD schedule. *See* 10 U.S.C. § 1216a(a)(1)–(2).

[10] This conclusion renders a number of Dr. Berkowitz's other arguments (such as those related to the use and meaning of the word "severe") moot. Additionally, a 50% disability rating (the lowest he would receive under a proper rating of his sleep apnea) entitles him to a medical retirement, making Dr. Berkowitz's arguments concerning a reserve retirement similarly moot --- as he would prefer the medical retirement to a reserve retirement. Oral Argument (September 2, 2011).

notwithstanding this determination, his benefits should still be excluded from gross income because he entered military service before September of 1975, and his disability benefits are therefore not subject to tax. Pl.'s Reply at 23–24; *see also* 26 U.S.C. § 104(b)(4). The Court agrees with plaintiff's second argument, and thus need not reach his first argument.

The record indicates that Dr. Berkowitz was in an inactive status with the United States Army Reserve as of late February 1975. AR at 272, 285; *see also* AR at 199 (indicating 60 months of service prior to his August 1976 commission). He remained in the military, in one capacity or another, from that date until his eventual discharge. *See* AR at 272, 285; *see also* Def.'s Stat. ¶¶ 2–7, 33; Pl.'s Counter-Stat. ¶¶ 2–7, 33. Under 26 U.S.C. § 104, a taxpayer who was a member of an armed service on September 24, 1975, does not have his military benefits received due to illness or injury included in gross income. 26 U.S.C. § 104(a)(4), (b)(2)(B). Apparently overlooking his prior service and focusing on Dr. Berkowitz's 1976 commission as a Second Lieutenant, defendant determined his benefits were includible in gross income. What matters, however, is that Dr. Berkowitz was a member of an armed service (including the reserve component), and not his commissioning as an officer. The record and the law being clear, we must reverse the board's determination that these benefits are subject to the federal income tax.

## III. CONCLUSION

For the foregoing reasons the government's motion to dismiss the education benefits claim is **GRANTED**, and its motion for judgment on the administrative record is **DENIED**; and plaintiff's cross-motion for judgment upon the administrative record is **GRANTED**. This matter is hereby **REMANDED** to ABCMR so that the proper VASRD standard can be applied to plaintiff's sleep apnea condition, and the proper back pay awarded and orders issued in accordance with plaintiff's higher disability rating.[11]

Pursuant to RCFC 52.2(b), the Court provides the following directions to the parties on remand.

(1) The remand period shall terminate on **March 4, 2015**, and proceedings in this case are **STAYED** until that date. If the ABCMR has not issued a decision on or by March 4, 2015, the parties shall follow the procedures set forth in RCFC 52.2(d).

---

[11] Because plaintiff is entitled to a disability retirement due to the 50% rating for sleep apnea, the dispute over his proper rank for retirement is also moot. Under 10 U.S.C. § 1372(2) (2012), plaintiff is entitled to be retired in the "highest temporary grade or rank in which he served satisfactorily," which based on the record appears to be lieutenant colonel.

(2)  The ABCMR shall:

      (a) assign Dr. Berkowitz a new disability rating for his sleep apnea, based on the ratings criteria for diagnostic code 6847 contained in 38 C.F.R. § 4.97;

      (b) issue any orders, and award any back pay or other relief Dr. Berkowitz is entitled to on account of the new disability rating; and

      (c) certify that his benefits should be excluded from gross income due to his membership in an armed service on September 24, 1975.

(3)  Pursuant to RCFC 52.2(b)(1)(D), defendant shall file a status report on or by **December 3, 2014**, and a second one on or by **March 3, 2015**, indicating the status of the proceedings before the ABCMR.

(4)  When proceedings before the ABCMR have concluded, the ABCMR shall forward four copies of its decision to the Clerk of the United States Court of Federal Claims pursuant to RCFC 52.2(e).  Within **thirty (30) days** of the filing of the ABCMR's decision, the parties shall then file the notices required by RCFC 52.2(f)(1).

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Judge

- 14 -